**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **WENDY FOSTER** | § | **CIVIL ACTION NO.** |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **7:18-cv-00204** |
| | § | |
| **FERRELLGAS, INC.** | § | |
| **DEFENDANT.** | § | **JURY DEMANDED** |

**PLAINTIFF'S COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

   Plaintiff **WENDY FOSTER ("Plaintiff")** files this Complaint and would respectfully show the Court as follows:

## PARTIES

   1.      Plaintiff is an individual who resides in Ector County, Texas.

   2.      **Defendant FERRELLGAS, INC. ("Defendant")** is a Delaware corporation with its principal place of business located in Liberty, Missouri and may be served with process through its registered agent CT Corp System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

   3.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3),
.

   4.      Venue is proper in the U.S. District Court for the Western District of Texas, Midland-Odessa Division pursuant to 28 U.S.C. §1391(b) because the unlawful practices alleged below were committed therein.

<u>EXHAUSTION OF ADMINISTRATIVE PROCEDURES</u>

5.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Plaintiff files this suit within (90) days of receiving a Notice of Right to Sue from the EEOC, a true and correct copy of which is attached hereto as Exhibit A.

<u>CONDITIONS PRECEDENT</u>

6.      All conditions precedent have been performed or have occurred.

<u>FACTS</u>

7.      Plaintiff was hired by Bridger Logistics/Bridger, LLC ("Bridger") as a Crew Logistics Scheduler in Midland, Texas.

**PLAINTIFF IS PAID $15,000.00 LESS THAN A YOUNGER WHITE FEMALE.**

8.      Plaintiff was hired by Regional Operations Manager Tom Glenn.  He told her he would increase her pay by $15,000.00 within 30 days.

9.      After 30 days, Plaintiff asked for her pay increase and was told they were working on it.

10.      Bridger was purchased by Defendant Ferrellgas, Inc. ("Defendant").  There was a lot of turnover with Plaintiff's supervisors.  She communicated with each supervisor her pay issue, explained the history, and asked for it to be fixed.

11.      Plaintiff learned that a younger white female employee was making $15,000.00 per year than Plaintiff.  She was making the amount promised to Plaintiff even though she was Plaintiff's trainee.

12.     Plaintiff informed her supervisor Bart Larson about the difference in her pay compared to the younger while female.  Plaintiff told him that she was being paid less because she is black.

**PLAINTIFF IS SUBJECTED TO SEXUAL ADVANCES FROM WANZER.**

13.     Plaintiff's immediate supervisor at the time of her termination was Bart Larson. However, Larson appointed Eldon Wanzer to be her "intermediate supervisor."

14.     Eldon Wanzer is Bart Larson's uncle.  They rode to work together every day.

15.     Eldon Wanzer made sexual advances toward Plaintiff.

16.     Eldon Wanzer started sitting right next to Plaintiff at her desk.  He would sit on the left side so no one would see what he was doing.  He would try to touch Plaintiff, but she would not allow him to.

17.     Eldon Wanzer would sometimes wear loose jogging shorts to work.  On those days, he would come sit on Plaintiff's left side and pull out his penis and try to pull her hand toward it to touch it.  Plaintiff would try to laugh it off and move away so that he would stop, but he would say, "Wendy, come on and focus, I have to train you."

18.     Later Eldon Wanzer asked to speak with Plaintiff in his office.  He whispered to her, "I really like you, and I can tell that you are nervous about it."  Plaintiff responded and said, "I don't like it and I would really appreciate it if you would stop."  He laughed and said, "You'll come around, and there is no harm.  Who you gonna tell, Bart?"  Plaintiff left the office, went back to my desk, and tried to work.

19.     Plaintiff felt that she could not tell Bart Larson because Eldon Wanzer is his uncle.

20.     Eldon Wanzer became a lot bolder.  If Plaintiff left the office to go to the kitchen or the restroom, he would follow her and then hug her or push upon her and try to put his arm around her and pull her toward him.

21.     One time he came into the restroom while Plaintiff was in there.  Plaintiff was about to walk out of the restroom and had just opened the door.  He was standing right there, in the door, blocked her way, came into the restroom, and locked the door.

22.     Plaintiff asked him, "What the hell are you doing?"  He was smiling and said, "Shhhh, just let me touch it."  Plaintiff refused and asked him to move and let her out.  He said, "You are really good at your job, you wanna lose it?"  Plaintiff pushed past him and got out of the restroom.

23.     Plaintiff had no one to tell because my immediate supervisor Bart Larson was his uncle.  Plaintiff felt she could not ask him for help because there were times when Bart Larson would stand in his office door behind Plaintiff's desk in the line of sight of Eldon Wanzer sitting next to me acting the way he was and Bart Larson would do nothing.  Plaintiff would tell Eldon, "Bart is looking at you like he needs you."  Eldon Wanzer would say to Bart Larson, "You need me boss?"  Bart Larsson would reply, "Naw, I'm good" then turn around or walk out of the office.

24.     On one occasion, Eldon Wanzer took Plaintiff to Chik-fil-A to bring back food for the office.  He pulled into an alley, exposed himself to Plaintiff, and pushed her head toward his penis.

25.     Plaintiff pulled away, told him no, and asked him to take her back to the office.  He tried to talk Plaintiff into what he wanted.  She opened the door of the truck and said, "No, I'll walk."

26.     Wanzer got mad and said, "Hold on, I can wait, I will take you back.  You can't walk."

27.     Plaintiff finally met with Bart Larson to ask him if she could go to him directly and not Eldon Wanzer on all matters.  Plaintiff also asked him if Eldon was able to fire her.

28.     Bart Larson told Plaintiff that he was her actual supervisor and that Eldon is just his Lead and has no say over her.  Plaintiff felt positive that he knew what she was going through with

Eldon, because he didn't ask any questions concerning the "why" of her request, or even the "why" of her questions.

## LARSON AND WANZER MAKE RACIST COMMENTS.

29.     On one occasion, Bart Larson and Eldon Wanzer were telling employees how they ended up with Bridger, and what happened at their old jobs.  Both said that they had been through the issues of people calling them racist, and getting racist complaints made against them.  Eldon looked and Plaintiff and said, "Wendy, you don't think that I'm am racist do you?"  As if it was an inside joke.

30.     Plaintiff turned around, looked away from him, and left him waiting for an answer, because he had made previous statements concerning her skin color, such as, telling her, "Wendy, you're too black to blush," after he had told a joke and everyone was laughing, and then Bart said, "Look, even Wendy's blushing."  That's when he told her that I am "too black to blush," and then he laughed.

31.     Everyone else laughed at it, including Bart Larson.

32.     Plaintiff's feelings were hurt, and she decided it was best to pull herself out of the office conversation totally.

33.     Over time, Eldon Wanzer backed off a bit, but would still occasionally come to Plaintiff's desk.  She would ignore him, and Bart Larson would call him to his office if he saw him. Eventually, Eldon Wanzer was demoted from the position of Bart Larson's Lead, back to a Scheduler, and Eldon Wanzer became bitter about that, and was eventually moved to the West Dispatch, and he would call on Plaintiff, randomly, to help him get a load completed that had been diverted incorrectly, and was difficult for him to close.

**PLAINTIFF'S SUPERVISOR TELLS HER SHE CANNOT TAKE
MEDICINE FOR MIGRAINES.**

34.     Plaintiff also has terrible migraine headaches and has a prescription for medication. Bart Larson told Plaintiff he would fire her if she took my medicine.  She informed her doctor why she was not taking her medicine, and he gave her a letter on January 29, 2016, asking that she be allowed to take medicine as directed.

35.     On February 8, 2016, Plaintiff asked Bart Larson and his supervisor Larry Garren for a personal meeting and asked again about her raise.

36.     Plaintiff was terminated on February 15, 2016.

37.     Plaintiff was offered a severance of two weeks' pay in exchange for a release of any and all claims relating to the termination of her employment.  Plaintiff did not sign the release.

38.     Defendant claims that Plaintiff was part of a reduction in force of four other employees.  However, Defendant did not tell Plaintiff that she was part of a reduction in force, and the severance agreement did not identify the job titles of those selected for termination and those retained, as required by the Older Worker Benefit Protection Act.

<u>COUNT ONE – RACE DISCRIMINATION (TITLE VII)-
DISPARATE PAY/TERMINATION</u>

39.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is black/African-American.  *See* 42 U.S.C. §2000e(f).

40.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

41.     Defendant intentionally discriminated against Plaintiff by paying her less than a similarly situated white employee and terminating her employment based on her race.

42.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

43.     To the extent that Defendant contends that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.

### COUNT TWO – TITLE VII – RACE RETALIATION

44.     Plaintiff is an employee within the meaning of Title VII.  *See* 42 U.S.C. §2000e(f).

45.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

46.     Defendant retaliated against Plaintiff by terminating her employment in violation of Title VII, 42 U.S.C. §2000e-3(a).

47.     Plaintiff engaged in protected activity when she complained to Defendant that she was paid $15,000.00 per year less than a white employee.

48.     Defendant terminated Plaintiff's employment because of her complaints of disparate treatment.

49.     To the extent that Defendant contends that Plaintiff was subject to a reduction in force, said reason is a mere pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's protected activity was a motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.

50.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages.  Defendant's conduct was willful and justifies an award of punitive damages.

### COUNT THREE – VIOLATION OF 42 U.S.C. §1981

51.     Defendant is liable because of its violation of 42 U.S.C. §1981 by not providing Plaintiff her equal rights as provided under the Civil Rights Act of 1866.

52.     Defendant discriminated against Plaintiff on the basis of her race including but not limited to paying Plaintiff less than a white employee and terminating Plaintiff's employment.

## COUNT FOUR – SEX DISCRIMINATION (TITLE VII)-
## QUID PRO QUO

53.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female.  *See* 42 U.S.C. §2000e(f).

54.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

55.     Defendant subjected Plaintiff to *quid pro quo* sexual harassment.  Wanzer had actual supervisory authority over Plaintiff.   Alternatively, Plaintiff reasonably believed that he had supervisory authority.  Wanzer conditioned the terms and condition of Plaintiff's employment on an exchange of sexual favors.  Defendant is strictly liable for Wanzer's actions.

56.     Defendant knew or should have known about the harassment and failed to prevent or correct it.

57.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

## COUNT FIVE – SEX DISCRIMINATION (TITLE VII)-
## HOSTILE WORK ENVIRONMENT

58.     Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely she is female.  *See* 42 U.S.C. §2000e(f).

59.     Defendant is an employer within the meaning of Title VII.  *See* 42 U.S.C. §2000e(b).

60.     Plaintiff was subjected to a hostile work environment sexual harassment by her co-worker Eldon Wanzer.

61.     Defendant knew or should have known about the harassment and failed to prevent or correct it.

62.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies an award of punitive damages.

<u>COUNT SIX – ADA</u>

63.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act (ADA).  *See* 42 U.S.C. §12111(4).

64.     Defendant is an employer within the meaning of the ADA.  *See* 42 U.S.C. §12111(5).

65.     Plaintiff is qualified to perform the essential functions of her job as a dispatcher.

66.     Plaintiff has a disability, namely she suffers from migraine headaches.

67.     Defendant violated the ADA when it fired Plaintiff because of her disability and/or because it regarded Plaintiff as having a disability

68.     To the extent that Defendant offers a reduction in force, or some other reason, as the reason for Plaintiff's termination, such reason is a pretext for discrimination.  Alternatively, the reason(s) given for Plaintiff's termination, while true, are only some of the reasons, and Plaintiff's disability was a motivating factor in the decision to terminate her employment.  In other words, Defendant had mixed motives for Plaintiff's termination.  Plaintiff is not required to elect to pursue a pretext or mixed motive claim until submission of the case to the jury.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages. Defendant's conduct was willful and justifies and award of punitive damages.

<u>DAMAGES</u>

70.     Plaintiff was discharged from employment by Defendant.  Although she has diligently sought other employment, she has been unable to find a job with comparable pay and benefits.  In addition, Plaintiff has incurred expenses in seeking other employment.  Plaintiff suffered damage to her pension or retirement benefits.  Plaintiff seeks compensation for all back pay and lost wages and benefits, including loss of Social Security benefits.  Reinstatement to Plaintiff's previous position is impractical and unworkable.  Therefore, Plaintiff seeks an award of front pay and future lost wages and benefits.

## ATTORNEY'S FEES

71.     Plaintiff was forced to engage counsel to protect her rights.  Plaintiff is entitled to an award of attorney's fees and costs (including but not limited to an award of reasonable expert witness fees), both trial and appellate, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3).

## INTEREST

72.     Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful rate.

## JURY TRIAL DEMAND

73.     Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the following:

a.     Compensatory and punitive damages;

b.     Back pay and front pay;

c.     Attorneys' fees and costs;

d.     Prejudgment and post-judgment interest;

e.     Such other and further relief, at law or in equity, to which Plaintiff may show herself justly and lawfully entitled.

Respectfully submitted,

By: /s/ Holly Williams
       Holly B. Williams
       Texas Bar No. 00788674

**WILLIAMS LAW FIRM, P.C.**
1209 W. Texas Avenue
Midland, TX 79701-6173
432-682-7800
432-682-1112 (fax)

**ATTORNEY FOR PLAINTIFF
WENDY FOSTER**

EEOC Form 161 (11/16)

EXHIBIT A

**U.S. Equal Employment Opportunity Commission**

## Dismissal and Notice of Rights

| | |
|---|---|
| To: **Wendy Foster**<br>**Po Box 688**<br>**Odessa, TX 79760** | From: **El Paso Area Office**<br>**100 N. Stanton St.**<br>**6th Floor, Suite 600**<br>**El Paso, TX 79901** |

| [ ] | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **453-2017-00042** | **Raul Ballesteros, Jr.,**<br>**Investigator** | **(915) 534-4526** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[X]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Lucy V. Orta,*
**Area Office Director**

AUG 2 2 2018

*(Date Mailed)*

Enclosures(s)

cc:
**Sue Hasty**
**Senior Human Resource Generalist**
**FERRELLGAS, INC.**
**One Liberty Plaza**
**Liberty, MO 64068**

**Holly Williams**
**WILLIAMS LAW FIRM**
**1209 W Texas Ave**
**Midland, TX 79701**

RECEIVED
AUG 2 7 2018
BY: